IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CERTAIN UNDERWRITERS AT LLOYD'S, : 
LONDON :
:
v. : Civil No. CCB-11-1809
:
:
R. J. WILSON & ASSOCIATES, LTD. *et al*. :

**MEMORANDUM**

Certain Underwriters at Lloyd's, London ("Underwriters") brought this action for breach of contract, breach of fiduciary duty, fraud, and unjust enrichment against two business partners in the United States, R.J. Wilson & Associates ("Wilson") and Medical Benefits Administrators of MD, Inc. ("MBA"). On July 17, 2012, the court granted Wilson's motion for leave to file a third-party complaint against Northshore International Insurance Services, Inc. ("NiiS"). NiiS has filed a motion to dismiss the third-party complaint. For the reasons stated below, the motion will be granted in part and denied in part.

**BACKGROUND**

As set forth fully in the court's memorandum and order granting Wilson leave to file the third-party complaint, *Certain Underwriters at Lloyd's, London v. R.J. Wilson & Assoc., Ltd.*, 2012 WL 2945489, at *1-4 (D. Md. July 17, 2012), this dispute concerns the "Client First" insurance program through which Underwriters provided excess loss coverage to certain employer self-funded benefit plans in the United States. (Compl., ECF No. 1, ¶ 4.) On March 3, 2005, Underwriters entered into a contract (the "Client First Binding Authority") with Wilson, a Maryland company, to provide for the administration of the program. (*See* Client First Binding Authority, ECF No. 1, Ex. B.) The contract authorized Wilson to function as an insurance agent

1

or "coverholder" for the program and identified MBA as the claims administrator for the program.[1] The Client First program included a mechanism through which Underwriters would provide the insured benefit plans with an advancement of funds once claims reached a certain level. The insureds would then repay Underwriters to the extent that the funds were not needed to pay out covered claims in excess of the plan deductibles. (Compl. ¶¶ 21–24.) The terms of this mechanism were stated in an amendment to each certificate of insurance, denominated the Monthly Aggregate Accommodation ("MAA") agreement. (*See* Compl., Ex. C.) Underwriters allege that Wilson was in charge of administering the advancements and recouping the repayments under the MAA mechanism and was required to submit monthly "bordereaux" reports to Underwriters detailing the claims, advancements, and repayments. (Compl. ¶ 28.)

According to the complaint, Wilson's June 2008 bordereaux report "revealed more than a million dollars in accommodation advances that had never been repaid to Underwriters." (*Id.* at ¶ 30.) As a result, Underwriters allege, they "employed [NiiS] to conduct a reconciliation review of aggregate accommodation advances and credits related to the Client First Certificates." (*Id.* at ¶ 31.) Underwriters allege that NiiS's audit "was hampered by Wilson and MBA's failure to maintain records as required by the Certificates." (*Id.* at ¶36.) Allegedly, nearly half the files associated with the monthly reports were "discovered to be missing." (*Id.*) Underwriters therefore could only rely on the numbers reported by Wilson in the June 2008 report and as a result issued a demand for repayment of $1,035,450.34 in overpayment accommodations. (*Id.* at ¶ 42.) Wilson responded to Underwriters by asserting that, based on its own calculations, Underwriters owed Wilson $236,969.05. (*Id.* at ¶ 43.)

---

[1] R.J. Wilson and MBA are related companies. R.J. Wilson is owned, at least in part, by Mr. Ronald Wilson and a Wilson family trust, of which Mr. Wilson is the trustee. Fifty percent of MBA is owned by a company called Wilson-Bennet, LLC, of which Mr. Wilson owns eighty percent.

On June 30, 2011, Underwriters filed this action, alleging breach of contract, breach of fiduciary duty, fraud, and unjust enrichment against Wilson and MBA. The complaint was largely based on the discrepancy in the June 2008 report and the irregularities during the audit process. (Compl. ¶ 41.) The court subsequently granted Wilson's motion for leave to file a third-party complaint which alleges that NiiS wrongfully interfered with and improperly interrupted Wilson's insurance contracts, claims processes, and business practices "for its own pecuniary gain" and, therefore, that NiiS is liable for any injury caused to Underwriters. (Third-Party Compl. ("TPC") ¶ 21-26, ECF No. 29-1.) The TPC contains three counts: tortious interference with contractual obligations (Count I), indemnification (Count II), and contribution (Count III). NiiS argues that the TPC fails to state any claim and should be dismissed.

**ANALYSIS**

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**I. Agency**

NiiS first argues that none of the claims against it could stand because it was acting exclusively as an agent of Underwriters and cannot be held separately liable under any of Wilson's theories. NiiS bases its argument on Wilson's allegation that NiiS was "sent by" and acting "on behalf of" Underwriters. (TPC ¶ 17, 38.) Wilson notes, however, that it also pled, in the alternative, that NiiS was "acting on its own accord" when it allegedly engaged in wrongful conduct. (*Id.* ¶ 21.) Thus, whether NiiS is potentially immune from liability because it was, in fact, an agent of Underwriters is a question that cannot be resolved on NiiS's motion to dismiss. The scope of any principal-agent relationship between NiiS and Underwriters, and whether NiiS acted outside that scope, are issues that cannot be determined by relying on the complaint alone, because the TPC contains allegations both that NiiS was directed by Underwriters and that it exceeded any such authority. *See Green v. H&R Block, Inc.*, 735 A.2d 1039, 1047-48 (Md. 1999) ("The existence of an agency relationship is a question of fact which must be submitted to the factfinder if any legally sufficient evidence tending to prove the agency is offered.") (citing *Faya v. Almaraz*, 620 A.2d 327, 339 (Md. 1993)). Accordingly, whether NiiS was acting at all times

only as Underwriters' agent such that it is immune from liability is a factual dispute to be resolved after discovery.

**II. Tortious Interference**

In addition to its agency argument, NiiS argues separately that Wilson has failed to state a claim of tortious interference. Because the agreements between Underwriters and Wilson were terminable at will, NiiS had a "broader right to interfere with economic relations" between them than if NiiS was alleged to have induced a breach of a non-terminable contract. *See Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984). Under these circumstances, to plead a claim of intentional interference with economic relations, Wilson must allege:

> (1) intentional and wilful acts; (2) calculated to cause damage to [it] in [its] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of [NiiS] (which constitutes malice); and (4) actual damage and loss resulting.

*Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010). Although competition is generally "just cause" for causing such economic damage, where a defendant has employed wrongful or unlawful means he or she may still be liable for the tortious act. *See Natural Design*, 485 A.2d at 676 (quoting Restatement (Second) of Torts § 768 (1977)). "While a plaintiff may prove that a defendant acted improperly or wrongfully by showing that he or she used violence, intimidation, injurious falsehood or other fraud, violated the criminal law, and instituted, or threatened, groundless civil suits or criminal prosecutions in bad faith, . . . in fact, conduct that is quite subtle, nevertheless, can be improper or wrongful." *Macklin v. Robert Logan Assoc.*, 639 A.2d 112, 119 (Md. 1994). Generally, such a determination is highly fact-based and must be made on a "case by case basis." *See Natural Design*, 485 A.2d at 675.

In the TPC, Wilson alleges that NiiS intentionally engaged in a pattern of conduct to ruin Wilson's relationship with Underwriters, leading to direct economic losses. None of the alleged

5

actions, however, such as "redirect[ing] payments, interrupt[ing] the claims handling process[,]" "direct[ing] money away from R.J. Wilson to its own accounts[,]" and "surreptitiously gathering information as to [Wilson's] business, records, clients, bookkeeping, and finances to be used against them[,]" (TPC ¶¶ 31, 36), plausibly rise to the requisite malicious or unlawful level necessary to maintain an action for tortious interference. Wilson admits that NiiS was taking such actions "for its own pecuniary gain[.]" (*Id.* at ¶ 22.) Much of the alleged conduct appears to be related to NiiS's legitimate role as an auditor, such as gathering information about Wilson's bookkeeping and finances. Wilson does not allege that NiiS actually broke any laws in pursuit of a competitive advantage over Wilson. The only potentially unlawful action Wilson alleges, broadly, is that NiiS engaged in "fraudulent conduct[.]" (*Id.* at ¶ 33.) Fraud must be pled with particularity, however, *see, e.g.*, *Banca Cremi v. Alex, Brown & Sons*, *Inc.*, 132 F.3d 1017, 1036 (4th Cir. 1997) (citing Fed. R. Civ. P. 9(b)), and Wilson offers no specificity whatsoever in its "fraud" allegation. The allegation of fraud appears to be more of a general characterization of NiiS's activity that Wilson believes was tortious rather than any particular instance of actual fraud. In short, Wilson has failed to state a claim that NiiS, with which Wilson admits it was engaged in economic competition, committed any act rising to the level of tortious interference under Maryland law.[2]

### III. Indemnification

In Maryland, "a defendant whose negligence was 'passive' may seek indemnity from a defendant whose negligence was 'active.'" *Richards v. Freeman*, 179 F. Supp. 2d 556, 560 (D. Md. 2002); *see also Pyramid Condominium Ass'n v. Morgan*, 606 F. Supp. 592, 595-96 (D. Md. 1985)). "To determine whether a tortfeasor's negligence is active or passive, courts refer to the

---

[2] Accordingly, Wilson has stated no claim for punitive damages against NiiS.

plaintiff's complaint against the defendant seeking to implead the third party." *Richards*, 179 F. Supp. 2d at 560. "If the alleged conduct attributed to the third-party plaintiff is active negligence, or if it is clear from the complaint that the third-party plaintiff's negligence would only arise from proof of active negligence, then there is no valid claim for indemnity." *Id.*

Underwriters have alleged only active wrongdoing by Wilson, including "withholding documentation[,]" "actively concealing required claims information and documentation[,]" and fraud by providing a false report to Underwriters. (Compl. ¶¶ 47, 62, 67.) Thus, a judgment against Wilson would necessarily require a factual finding that Wilson was, at a minimum, "actively" negligent, and, thus, it would not be entitled to indemnification from a third-party, even if that party also engaged in wrongful conduct. Accordingly, Wilson's indemnification claim must be dismissed.

**IV. Contribution**

Under Maryland's Uniform Contribution Among Tort–Feasors Act ("UCATA"), a defendant may seek contribution from a joint tortfeasor where "two or more persons [are] jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." *See* Md. Code Ann., Cts. & Jud. Proc., §§ 3-1401—09; *see also Richards*, 179 F. Supp. 2d at 560. "Contribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Parler & Wobber v. Miles & Stockbridge*, 756 A.2d 526, 534 (Md. 2000) (citation omitted).

NiiS argues that Wilson has failed to state a claim for contribution because, under the UCATA, the third-party plaintiff must allege that the third-party defendant has "original tort liability to plaintiffs in the underlying suit." *Heritage Harbour, LLC v. John J. Reynolds, Inc.*,

795 A.2d 806, 810-11 (Md. App. 2002). But, although the allegation is somewhat marginal, Wilson has pled in the TPC that "to the extent [Underwriters] has been damaged as alleged . . . any such damage was caused by NiiS and not by [Wilson]." (TPC ¶ 23.) Construed in the light most favorable to Wilson, it appears that the TPC properly alleges that the numerous instances of wrongful conduct Wilson believes NiiS perpetrated when it was given access to Wilson's records and business processes during the audit caused Underwriter's purported losses. Certainly, if Wilson proves that NiiS engaged in wrongdoing, such as directing funds away from Wilson and to its own accounts during the audit or in claims processing, it is plausible that NiiS contributed to the losses Underwriters has alleged. Wilson's allegations rest on the premise that NiiS abused its position as auditor to improperly hinder Wilson's claims processing, to Underwriter's detriment. If Wilson is able to adduce evidence that supports this premise, then Wilson may be able to prove NiiS would be liable to Underwriters for causing the losses. Thus, although the viability of its allegations will be determined in discovery, Wilson has stated a claim for contribution against NiiS.

## CONCLUSION

For the reasons stated above, NiiS's motion to dismiss will be granted in part and denied in part.

A separate Order follows.

June 25, 2013  
Date

/s/  
Catherine C. Blake  
United States District Judge